The Roanoke and Tar River Railroad Company was incorporated by chapter 218, Laws 1885.
The petition of the plaintiff alleged that the defendant corporation entered upon the land claimed by her, without her permission, and proceeded to construct its roadbed thereon, whereby she was greatly damaged, etc., and prayed the appointment of commissioners to assess her damages. The defendant, among other things, set up by way of defense a conveyance to it by one Harrell and wife of the right of way, etc., through and over the land; and alleged that at the date of the deed Harrell was in possession, but prior theretofore he conveyed the land in mortgage to one Perry and one Jernigan; that the land was subsequently sold under the mortgage, when Perry purchased, and having received a conveyance, sold and conveyed to the plaintiff. *Page 38 
The defendant also pleaded the statute of limitations contained in the act incorporating the North Carolina Railroad Company, and the statute of limitations of three years prescribed in The Code.
The following facts were admitted:
1. The railroad was completed on the locus in quo more than two, but less than three years, before this action was commenced.
2. That at the time said railroad was constructed and completed, the plaintiff was not the owner of the locus in quo.
3. That at the time the road was built, Joseph John Harrell and wife were the mortgagors in possession of said land, and J. W. Perry and T. R. Jernigan the mortgagees, and under a foreclosure of said mortgage J. W. Perry became the purchaser, and on 15 May, 1890, conveyed the locus in quo
to plaintiff.
4. On 19 May, 1887, said J. John Harrell and wife conveyed (54) to defendant the right of way over said land. The said mortgage was registered prior to the commencement of the construction of said road, and no consent to said right of way was obtained from said mortgagees.
The court being of opinion, upon this state of facts, that the plaintiff could not maintain this proceeding, adjudged that it be dismissed with costs, and the plaintiff appealed.
1. The plea of the statute of limitations cannot be sustained. It is true that the charter of the defendant provides that it shall have "the powers and incidents of the North Carolina Railroad Company and other corporations of like nature created by the laws of the State," but this language is exceedingly indefinite upon the question under consideration, as the charters of some of these corporations contain provisions barring the owner's claim for damages or compensation after a certain period, while others provide for no such limitation whatever. Land v. R. R., 107 N.C. 72. Even had the charter of the North Carolina Railroad Company been particularly referred to, the two years' bar therein prescribed would not have prevented the application of the general railroad act (chapter 49 of The Code), which was enacted prior to the granting of the defendant's charter. Under the general act, as construed by this Court in Land v. R.R., supra, the defendant can only acquire title to the right of way by purchase or by proceedings to condemn, and so long as it occupies the land without title, the owner is not barred unless the defendant's possession has been adverse and for such length of time as to mature title as in ordinary cases. Thus, it *Page 39 
appears that there is a very great difference between the charter of the North Carolina Railroad Company and the general act, and it was clearly the policy of the Legislature that the provisions of the (55) latter should not, in any material particular, be repealed by implication. Hence, it was enacted (The Code, sec. 701) that the general act "should govern and control, anything in the special act of Assembly to the contrary notwithstanding, unless in the act of Assembly creating the corporation the section or sections (of the general act which are intended to be excluded) shall be specially referred to by number, and, as such, specially repealed." See R. R. v. R. R., 106 N.C. 16, which is conclusive upon this point.
2. It is insisted, however, that, as the plaintiff was not the owner of the land at the time of the entry and the completion of the road, she is not entitled to maintain this proceeding. The cases from other States, cited by the defendant's counsel, sustain this view so far as the recovery of mere damages, incident to the unlawful entry, is concerned. They may, also, be applicable where the railroad company acquires a right by a simple entry, leaving the damages and compensation to be subsequently assessed. In such cases the claim of the owner is said to be personal, and does not pass to a purchaser by an ordinary conveyance of the land. The principle does not apply where, as in our case (under the general act), the railroad company acquires no right whatever until, either at its instance, or that of the owner proceedings have been instituted to condemn the property. Until this is done, the company occupies the land without title (Land v. R.R., supra), and it would seem quite plain that the occupation of a trespasser ought not to take away the owner's power of alienation.
In our case the only authority to enter was given by the mortgagor, and it is admitted that the consent of the mortgagee has never been obtained. It is well settled that "a deed from a mortgagor conveys only his interest, and is subject to the mortgage." Lewis Eminent Domain, sec. 289. To the same effect is Mills on Eminent (56) Domain, sec. 74, from which work we extract the following: "In the case of Wade v. Hennessy, 55 Vt. 207, in which the company, instead of condemning the land by due process, took a deed from the mortgagor, a mortgage having been previously given by the grantor and recorded, it was held that the fact that the railroad company, under the exercise of the right of eminent domain, might have taken the mortgagee's interest in the mortgaged premises, and thereby have obtained an unimpeachable title, did not vary the relations of the railroad company to the holder of the mortgage, as it did not exercise that right, but contented itself with the right it acquired by said deed. To the proper exercise of the right of eminent domain, it is indispensable that *Page 40 
compensation be made to the owner of the property taken by the payment of an equivalent in money. The railroad company must make all parties claiming the title parties to the proceedings. . . . If this is not done, the railroad must either redeem, or seek protection by the exercise of the right of eminent domain under the statute against the mortgagee." See also,Wilson v. R. R., 67 Me. 358; Beck v. R. R., 65 Miss. 172; 2 Wood Ry. Law, sec. 244. The mortgagee's interest, then, not having been affected by the deed of the mortgagor, and the mortgage having been foreclosed, it would seem very clear that the title passed to the plaintiff, who purchased the entire tract under the foreclosure sale. It seems equally clear that while she cannot recover damages incident to the entry made before she acquired the title, she may recover compensation for the land, the title to which can only vest in the defendant by virtue of this proceeding.
The defendant has been content to occupy the land without title, and it was charged with notice of the mortgage. Mills, Eminent Domain, sec. 103. It did not offer to redeem, as it might have done, but (57) suffered the title to pass to the plaintiff.
We are of the opinion that the plaintiff is entitled to compensation for the land, the title to which is to be vested in the defendant by virtue of this proceeding.
Error.
Cited: S. c., 114 N.C. 695; Phillips v. Tel. Co., 130 N.C. 526; Bealv. R. R., 136 N.C. 299; Abernathy v. R. R., 159 N.C. 344; R. R. v.Ferguson, 169 N.C. 71; Caveness v. R. R., 172 N.C. 309.